OPINION
{¶ 1} Kris Clark was charged with DUI, fictitious plates, being intoxicated in a roadway, and an open container violation. After a bench trial, Clark was found guilty of DUI and fictitious plates and not guilty of the other charges. On the DUI charge, the court imposed a ninety-day jail sentence with sixty days suspended, an $850 fine, costs, a treatment program, and a two-year license suspension. On the fictitious plates charge, Clark was fined $25. On appeal of the DUI conviction only, Clark advances two assignments of error which may be considered together:
 {¶ 2} "1. The State of Ohio failed to prove beyond a reasonable doubt that the defendant-appellant violated Section 4511.19(A)(1) of the Ohio Revised Code (operation of a motor vehicle while under the influence of alcohol).
 {¶ 3} "2. The trial court erred in overruling the defendant-appellant's motion for a directed verdict, made at the close of the prosecution's case, and renewed at the close of all of the evidence."
 {¶ 4} At trial, Arcanum Police Captain Robert Keiser testified that after observing Clark's car proceed — uneventfully — through a school crossing, he soon thereafter observed the same car improperly parked at a corner. The rear of the car protruded into the cross street of the corner, partially blocking traffic on the cross street. Captain Keiser reported Clark's fictitious plates to Police Chief Dan Light who approached Clark in his cruiser to investigate. Upon Chief Light's approaching Clark, Clark "took off" rapidly and only stopped after a short pursuit of 150 feet through alleys, during which Clark failed to use turn signals.
 {¶ 5} When Clark stopped, it was in front of his former wife's residence. He walked up onto her porch when Chief Light called him back to the street, where Chief Light observed as to Clark bloodshot eyes, a strong odor of alcohol and "scattered" — as contrasted with "slurred" — speech, which Chief Light described as "nervous darting" and "jump(ing) off subject to something else."
 {¶ 6} Because Clark's car was being towed due to fictitious plates, Clark was allowed to unload the contents of the car onto the former wife's porch, including a cooler containing cans of beer. Clark chugged a fresh beer in Chief Light's presence saying, "That'll mess up your test." Chief Light interpreted Clark's behavior as indicating alcohol impairment. En route to the sheriff's office, Clark told Chief Light he was an alcoholic and would refuse a breath test. No field sobriety tests were administered.
 {¶ 7} Clark's present wife was at the scene of the former wife's residence and testified, in effect, that Clark's behavior had been normal, although he was "just angry, enraged."
 {¶ 8} Several empty beer cans were behind Clark's driver's seat.
 {¶ 9} The trial court analyzed the evidence as follows:
 {¶ 10} ". . . that leads us to the serious charge. That's the DUI. And in regard to that, I do want to read for the benefit of all parties basically a part of the Ohio Jury Instructions (inaudible) very significant in this matter. Under the influence means that the Defendant consumed some alcohol whether mild or potent in such a quantity whether small or great, that it adversely affected and appreciably impaired the Defendant's actions, reactions and mental processes under the circumstances that existed and deprived him of that clearness of intellect and control of himself which he would have otherwise possessed. That question is not how much alcohol would affect an ordinary person. The question is what effect did any alcohol consumed by the Defendant have on him at the time and place involved. Appreciable means noticeable or perceptible under applicable law.
 {¶ 11} "* * *
 {¶ 12} ". . . I've heard two indicators of impairment.
 {¶ 13} "* * *
 {¶ 14} ". . . one is parking the motor vehicle in such a manner as to block the street. That's certainly an indicator of impairment. And the second is driving in an erratic manner and not using turn signals. Not while he was allegedly fleeing but simply while the officer observed him driving through the alleys.
 {¶ 15} "Those in and of themselves I think are sufficient for me to find beyond a reasonable doubt that the Defendant was operating a motor vehicle while impaired. When you couple that with the other indicators of consumption, and that's what they are is indicators of consumption, the whole thing together requires me to find the Defendant guilty. I would treat the admission of the Defendant that he drank a beer to mess up the test the same way that one would treat a refusal to take the test. It's the same indicator but it's not a key here. The key are (inaudible) (parking?) such a manner as to block the roadway and driving in an erratic manner so as to not use turn signals while operating in the alleys of Arcanum. That coupled with the bloodshot eyes, strong odor, mention of drinking and drinking to mess up the test is sufficient to find the Defendant guilty of an A1 violation."
 {¶ 16} Clark was found guilty of DUI, an offense defined in part by R.C. 4511.19(A)(1): "No person shall operate any vehicle . . . if . . . (t)he person is under the influence of alcohol. . . ."
 {¶ 17} Clark adopts the formulation of "under the influence" found in Ohio Jury Instructions and utilized by the trial court. Supra.
 {¶ 18} Essentially, Clark argues that the State's evidence was insufficient to establish his guilt beyond a reasonable doubt.
 {¶ 19} In our judgment, the trial court reasonably concluded beyond a reasonable doubt that Clark was driving under the influence of alcohol. There is no question that Clark was observed driving a particular car before and after it was observed to be improperly parked. Parking a car so carelessly as to impede the flow of traffic is certainly evidence of impaired driving. So too was Clark's route through alleys to his former wife's residence without benefit of turn signals some evidence of impairment. We also believe that the trial court properly treated Clark's chugging a beer to "mess up (the) test" as the functional equivalent of a test refusal. That conduct was probative evidence on the question of whether Clark was under the influence of alcohol. SeeWesterville v. Cunningham (1968), 15 Ohio St.2d 121, 122-3. Finally, Clark had bloodshot eyes, a strong odor of alcohol about him, "scattered speech," and several empty beer cans behind his driver's seat. All of this, considered together, supported a reasonable inference that Clark was driving under the influence of alcohol. The trial court was not obliged to credit the testimony of Clark's current wife.
 {¶ 20} The assignments of error are overruled.
 {¶ 21} The judgment will be affirmed.
BROGAN, J., concurs.